**The STATE of Ohio, Appellant,**

**v.**

**FRADY, Appellee.**

[Cite as *State v. Frady* (2001), 142 Ohio App.3d 776.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2001–CA–2.

Decided May 18, 2001.

---

*James R. Livingston,* for appellant.

*Melanie A. Frady, pro se.*

---

FAIN, Judge.

Plaintiff-appellant, the state of Ohio, appeals from an order suppressing evidence in its prosecution of defendant-appellee, Melanie Frady, for DUI, driving left of center, and consuming alcohol in a motor vehicle. The state contends that the trial court erred when it found that the stopping officer was without the necessary reasonable and articulable suspicion to justify continuing an investigation for DUI by the administration of field sobriety tests. We agree. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

West Milton police officer Michael Vickers noticed the car being driven by Frady at 2:21 a.m. on May 27, 2000. He saw her drift to the right, and come within a "foot or two" of hitting two parked cars, then drift to the left, crossing the center line and driving on the wrong side of the road. She then drifted back to the right, again coming within a foot of hitting parked cars.

Frady managed to stop properly at a stop sign. She then turned left, and thereafter crossed the double yellow center line. At this point, Vickers turned on his overhead lights and stopped her. Vickers testified what happened thereafter, as follows:

"Q. What happened, when you got up there, what happened?

"A. Uh, I asked the female for her drivers license. She gave me that and the name on the license was Melanie Frady.

"Q. O.K.

"A. She was smoking and uh, I asked her if she had anything to drink tonight? And at that time she started, she was crying and she said you are not going to arrest me, are you?

"Q. O.K. When you went up there to the vehicle and were talking with her, she was seated in the vehicle behind the drivers seat?

"A. Yes sir.

"Q. What if anything did you uh, smell when you went up there?

"A. At that time I couldn't smell any alcohol or anything like that. All I could smell was the smoke because she was smoking at the time. Uh, I asked her to step out of the car and she dropped her cigarette out the window and she got out of the car. She took uh, one step back towards the rear of the car and she lost her balance and fell into her car and she used the trunk as a support to walk away, the rest of the way around the car to the uh, sidewalk. I asked her if uh, she would take some field coordination tests for me and she said she couldn't do them. I asked her if she had anything to drink again and she said yes. And I asked her how much and she told me too much. And as I was talking to her I could smell the strong odor of an alcoholic beverage coming from her breath and person. While I was talking to her I noticed that her eyes were red and bloodshot and watery. And as I was talking to her, also I noticed that she was swaying back and forth. And I asked her again to do some field coordination tests for me and she agreed to do them for me at that time. The first test we did was the Horizontal Gaze Nystagmus Test. And during that test, she could not smoothly follow my pen to either side."

Following the Horizontal Gaze Nystagmus test, Vickers asked Frady to perform a one-leg stand test, but she told him, "I can't do that sober." She was then asked to recite the alphabet, and then to count backwards from seventy-five to fifty-five. Her performance on all three tests was not impressive, and she thereafter declined to perform any more tests. She was then arrested and charged with DUI, driving left of the center line, and consuming alcohol in a motor vehicle. Frady moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop, detention, and arrest. The motion to suppress was heard before a magistrate, who rendered a written decision opining that although the police officer could have had a valid reason to suspect that Frady was under the influence of alcohol, the officer had testified that he did not, in fact, suspect Frady of driving under the influence when he prolonged the detention by asking her to submit to field sobriety tests. The magistrate also noted that the officer had not given Frady any *Miranda* warnings before arresting her.

The state objected to the magistrate's decision. The entire entry overruling the state's objections, and ordering the suppression of the evidence, is as follows:

"This matter comes before the Court on the objections to the decision of the Magistrate filed by the State of Ohio. The State is referred to *State v. Segi* (August 18, 2000), Montgomery App. No. 18267 [unreported] [2000 WL 1162035], and *State v. Spillers* (March 24, 2000), Darke App. No. 1504 [unreported] [2000 WL 299550]. The State's contention that once a person is stopped for erratic driving, even if there is no smell of alcohol, that the officer has the right to

continue with the an [*sic*] investigation for DUI is directly contrary to the holdings in both of the decisions set forth above.

"Therefore, after an independent review of both the case and the decision of the Magistrate, it appears to the Court that the Magistrate's decision contains no error of law or other defect on the face of the Magistrate's decision and that such findings and recommendation were entirely reasonable based upon the record, and as such it is therefore ORDERED that the decision of the Magistrate is affirmed."

From the order suppressing evidence, the state appeals.

## II

The state's sole assignment of error is as follows:

"The trial court erred in finding that although the arresting officer had probable cause to stop defendant after her substantial erratic driving, he did not then have the right to continue his investigation by asking the defendant to step out of her car to get her away from the masking effects of the smoke in her car."

No one questions the propriety of the initial stop, since Officer Vickers observed actual traffic violations justifying the issuance of a citation. The trial court found, however, that Vickers's continuation of the stop with his DUI investigation was unlawful. It appears that both the magistrate and the trial judge concluded that it was unreasonable for Vickers to administer field sobriety tests to Frady, based solely on the erratic driving that Vickers had observed. We disagree.

Initially, we reject the implication in the magistrate's decision that Vickers was required to administer *Miranda* warnings before arresting Frady. *Miranda* warnings are required before custodial interrogation. Frady was not in custody until she was arrested. Therefore, before her arrest, Vickers was under no obligation to administer warnings pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

It appears that Vickers asked Frady to step out of her car right after he went up to her and got her name and driver's license. In other words, she was asked to, and did, step out of her car while she was still being reasonably detained for the purpose of investigating the observed traffic violations and citing her for them. When a person is being detained for that purpose, the additional intrusion represented by requiring that person to get out of her car is de minimis, and is not protected by the Fourth Amendment to the United States Constitution. *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111, 98 S.Ct. 330, 333–334, 54 L.Ed.2d 331, 337.

After getting out of her car, Frady fell and had to support herself by leaning into the car. At this time, Vickers noticed that Frady's eyes were bloodshot and watery. He also noticed an odor of alcohol that he characterized as strong.

Vickers had already asked Frady, while she was still in the car, whether she had had anything to drink. Rather than answering this question, Frady began crying, and said, "You are not going to arrest me, are you?"

After Vickers observed Frady fall into the car, noticed her bloodshot, watery eyes, and detected the strong odor of alcohol, he again asked her if she had had anything to drink. This time, Frady responded in the affirmative. Vickers then asked her how much, and she replied "too much."

■ In our view, none of these questions were unreasonable, under the circumstances. Furthermore, there does not appear to be any evidence that the stop was unreasonably prolonged.

■ It was only at this point, after having observed Frady fall into the car, having observed her watery, bloodshot eyes, having detected the strong odor of alcohol, and having elicited Frady's admission that she had had "too much" to drink, that Vickers administered field sobriety tests. In our view, Vickers had an ample, reasonable, and articulable suspicion justifying prolonging the detention at that point to administer field sobriety tests.

In its decision, the trial court cites *State v. Segi* (Aug. 18, 2000), Montgomery App. No. 18267, unreported, 2000 WL 1162035, and *State v. Spillers* (Mar. 24, 2000), Darke App. No. 1504, unreported, 2000 WL 299550. In *Spillers*, the trial court suppressed evidence obtained as the result of a DUI investigation, having found, from conflicting evidence, that the stopping officer had observed merely "de minimis" traffic violations while following the defendant for several miles, and without any other indicia of intoxication. The trial court found that the officer's observations were insufficient to justify the administration of field sobriety tests, and we agreed. In the case before us, by contrast, the arresting officer observed Frady come close to hitting parked cars twice, and cross the center line completely, driving on the wrong side of the road, before stopping her. Thereafter, he encountered abundant evidence that she was intoxicated. It was only after all of these observations, that the arresting officer administered field sobriety tests.

*State v. Segi*, the other case cited by the trial court, is similar to *State v. Spillers, supra*, except that in *Segi*, the defendant was actually arrested before the administration of field sobriety tests, so that the full probable cause required for an arrest would have been necessary, and was found to have been lacking.

■ In the magistrate's decision in the case before us, the magistrate opined that although Vickers "would have had ample reason to suspect that she [Frady] was under the influence of alcohol," the officer testified that Frady was not a suspect at that time. As we have noted, the relevant time is when the officer decided to administer the field sobriety tests. At that time, it is clear that the officer suspected Frady of DUI, and there was abundant evidence to support that suspicion. However, we note that even if the relevant time had been earlier, and even if the officer's testimony could reasonably be characterized as an admission that he did not have a suspicion that Frady had committed DUI when he decided to detain her for the purpose of investigating possible DUI, we still would disagree with the magistrate's reasoning. Under *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, and *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, the proper analysis of issues involving stops and arrests is not the reasoning process actually employed by the police officer, but whether an objectively reasonable police officer observing what the police officer in question actually observed would have had a proper basis for the stop, detention, or arrest. Therefore, all that would have been required to validate Officer Vickers's detention of Frady for the purpose of administering field sobriety tests is observations by him that would justify an objectively reasonable police officer in detaining her for that purpose.

The state's sole assignment of error is sustained.

### III

The state's sole assignment of error having been sustained, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WOLFF, P.J., and FREDERICK N. YOUNG, J., concur.