OPINION
{¶ 1} Defendant-appellant Glen G. Pyle, Jr., appeals from the denial of his motion to suppress. Pyle contends that Trooper Anthony J. Kovach lacked probable cause to arrest him for Driving Under the Influence and Failure to Maintain Reasonable Control, and that statements made by Pyle, after his illegal arrest and subsequent custodial interrogation, must be suppressed. The State argues that Pyle was not placed under arrest at any time relevant to Pyle's requested suppression of evidence, and that Pyle was not entitled to warnings pursuant toMiranda v. Arizona (1966), 384 U.S. 436, because he was not in custody at the time of questioning.
 {¶ 2} We conclude that Pyle's contention that Trooper Kovach lacked probable cause to arrest him is moot, because there is nothing in the record to demonstrate that Pyle was arrested by Trooper Kovach, since the four requisite elements for an arrest have not been shown to have been present. However, we conclude that even if Pyle had, in fact, been arrested, Trooper Kovach did have probable cause for an arrest, based on the surrounding facts and circumstances within his knowledge.
 {¶ 3} We also conclude that Pyle's Miranda rights were not violated, because Trooper Kovach did not conduct a custodial interrogation. While Pyle was restricted in his freedom of movement due to his need to obtain the necessary medical treatment for his injuries, the record does not demonstrate that he was deprived of his freedom of movement by Trooper Kovach. Thus, we conclude that a reasonable person in Pyle's position would not have considered himself to be in custody.
 {¶ 4} Therefore, we conclude that the trial court did not err in overruling Pyle's motion to suppress. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 5} In the early morning hours in late September, 2002, Trooper Anthony J. Kovach was dispatched to the scene of an automobile accident at the intersection of Colonel Glenn Highway and Old Yellow Springs Road in Bath Township, Ohio. Trooper Kovach arrived on the scene around 4:15 a.m., and observed Pyle on a backboard, with his neck secured in a brace, being placed in a rig by medics for transportation to the hospital. Trooper Kovach then began to investigate the accident by following the trail of damage to locate the vehicle involved in the accident.
 {¶ 6} Trooper Kovach determined that Pyle was driving eastbound on Colonel Glenn Highway and drove off the roadway when he failed to curve to the left to continue on Colonel Glenn Highway or curve to the right to turn onto Old Yellow Springs Road. Trooper Kovach determined that the vehicle went through a guardrail, control box, and billboard and had knocked over a tree before landing in a creek, on its side, 174 feet off the roadway.
 {¶ 7} When a second officer arrived on the scene, Trooper Kovach left the accident scene and went to Miami Valley Hospital, where Pyle had been taken. Trooper Kovach was directed by hospital personnel to Pyle's room. When Trooper Kovach entered Pyle's room, he detected a strong odor of an alcoholic beverage that he determined was coming from Pyle's breath. Trooper Kovach introduced himself to Pyle, who was still on the backboard with his neck secured, and began questioning Pyle about the accident. Pyle informed Trooper Kovach that he had been traveling at approximately 45 miles per hour and was driving from Cincinnati to Centerville, Ohio. Pyle further informed Trooper Kovach that he had last slept the night of September 26th, and that he had consumed two alcoholic beverages between 10:00 p.m. and midnight on September 26th, three or four hours prior to the accident. When Trooper Kovach asked if he was on any prescription medicines, Pyle replied that he took Oxycontin daily.
 {¶ 8} After Pyle indicated that he had consumed alcoholic beverages, and took Oxycontin daily, Trooper Kovach asked Pyle if he could check his eyes for a horizontal gaze nystagmus test. Pyle did not consent to the test. Trooper Kovach left the hospital room to get a nurse to draw Pyle's blood. Trooper Kovach returned with a lab technician, but Pyle refused to submit to a blood test. Trooper Kovach read Pyle hisMiranda rights, and then cited Pyle for Driving Under the Influence and Failure to Maintain Reasonable Control.
 {¶ 9} Pyle was subsequently charged with Driving Under the Influence and Failure to Maintain Reasonable Control. Pyle entered a plea of not guilty and filed a motion to suppress. After a hearing, the magistrate overruled Pyle's motion to suppress. Pyle then filed objections to the magistrate's decision. The trial court overruled Pyle's motion to suppress, finding that Trooper Kovach had probable cause to arrest Pyle, and that Trooper Kovach did not violate Pyle's Miranda
rights by questioning him at the hospital prior to his arrest. Pyle then entered a plea of no contest, was found guilty, and was subsequently sentenced to one year in jail. Pyle was also fined and was assessed court costs.
 {¶ 10} From his conviction and sentence, Pyle appeals.
 II {¶ 11} Pyle's sole Assignment of Error is as follows:
 {¶ 12} "The trial court erred in overruling the appellant's motion to suppress."
 {¶ 13} Pyle contends that Trooper Kovach lacked probable cause to arrest him, and that statements made by Pyle, after his illegal arrest and subsequent custodial interrogation, must be suppressed. The State argues that Pyle was not placed under arrest at any time relevant to Pyle's motion to suppress, and that Pyle was not entitled to Miranda
warnings, because he was not in custody at the time of questioning.
 {¶ 14} "The existence of an arrest is dependent upon the existence of four requisite elements: (1) an intent to arrest; (2) under real or assumed authority; (3) accompanied by an actual or constructive seizure of the person; and, (4) which is so understood by the person arrested."State v. Hatch, Montgomery App. No. 18986, 2002-Ohio-55, 2002 WL 10449, at *3 (citation omitted). "A seizure is an arrest . . . if a `reasonable person' in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associated with formal arrest." Id. at *4 (citation omitted). The Ohio Supreme Court has specifically rejected "the concept that receipt of a traffic citation is the functional equivalent of an arrest." State v.Darrah (1980), 64 Ohio St.2d 22, 27, 412 N.E.2d 1328 (citation omitted).
 {¶ 15} The record does not demonstrate that the four requisite elements of an arrest were present in this case. Trooper Kovach testified that Pyle was not under arrest, and that Pyle was merely being questioned regarding the accident. Trooper Kovach also testified that after he read Pyle his Miranda warnings, he did not tell Pyle he was under arrest, and he did not handcuff Pyle. We conclude that there is nothing in the record to demonstrate that Trooper Kovach manifested an intent to arrest Pyle.
 {¶ 16} Trooper Kovach also testified that he did not do anything physical to Pyle to indicate that Pyle was under arrest or that he was not free to go. The record shows that Pyle was not restrained in his freedom of movement because of Trooper Kovach, but because of medical treatment for his injuries. We conclude that there is nothing in the record to demonstrate that there was an actual or constructive seizure of Pyle by Trooper Kovach.
 {¶ 17} Trooper Kovach also testified that when he issued the citations to Pyle, Pyle said that he did not understand why he was getting the citations, and that he was not dangerous. There is no evidence in the record that Pyle understood that he was being arrested. Based on the foregoing, we conclude that the four requisite elements of an arrest have not been met. Therefore, Pyle's contention that Trooper Kovach lacked probable cause to arrest him is moot, because there is nothing in the record to demonstrate that Pyle was arrested by Trooper Kovach.
 {¶ 18} However, we do note that if Pyle were deemed to have been arrested, Trooper Kovach did have probable cause for an arrest, based on the surrounding facts and circumstances within his knowledge. "Whether [an] arrest [is] constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio (1964),379 U.S. 89, 91 (citations omitted).
 {¶ 19} Here, Trooper Kovach determined that the vehicle Pyle had been driving went through a guardrail, control box, and billboard and had knocked over a tree prior to coming to rest in a creek, on its side, 174 feet from the roadway. Pyle informed Trooper Kovach that he had been traveling from Cincinnati to Centerville, but based on the location of the accident, Trooper Kovach realized that Pyle had already passed Centerville, if he was traveling from Cincinnati. When Trooper Kovach entered Pyle's hospital room, he detected a strong odor of an alcoholic beverage, which he determined to be coming from Pyle's breath. Pyle further informed Trooper Kovach that he had last slept the night of September 26th, and that he had consumed two alcoholic beverages between 10:00 p.m. and midnight on September 26th, three or four hours prior to the accident. When Trooper Kovach asked if he was on any prescription medicines, Pyle replied that he took Oxycontin daily. Trooper Kovach knew, based on his training, that Oxycontin was a prescribed medication that comes with warnings concerning driving while under the medication.
 {¶ 20} In addition, Pyle informed Trooper Kovach that he did not know why he was in Cincinnati, and that he did not know where he was at the time of the accident. Trooper Kovach observed that Pyle had difficulty concentrating and remembering questions. Trooper Kovach also observed Pyle's eyes were bloodshot, red and glassy, and that his pupils were of equal size, which indicated to him that Pyle did not have a concussion. The nursing staff at the hospital also informed Trooper Kovach that Pyle was belligerent and hostile with them, and that they thought Pyle was under the influence, based on the odor coming from his breath, his eyes, and the way he was speaking to them. At that moment, the facts and circumstances within Trooper Kovach's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that Pyle had committed the offense of driving under the influence. Thus, probable cause did exist for an arrest.
 {¶ 21} We also conclude that Pyle's Miranda rights were not violated by Trooper Kovach questioning him at the hospital. The United States Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. "Determining what constitutes `custody' for Miranda purposes depends upon the facts of each case. . . . The ultimate inquiry is, however, whether there is a `formal arrest or restraint on movement of the degree associated with a formal arrest.' In assessing whether such a restraint on movement has occurred `the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation.'" State v. Bowshier, Clark App. No. 2898, 1992 WL 288780, at *4 (internal citations omitted).
 {¶ 22} The record demonstrates that Pyle was not brought to the hospital by Trooper Kovach for questioning, but was brought by medics for treatment of his injuries. The record also shows that Pyle was not restrained by Trooper Kovach, but was restrained for medical treatment due to his injuries. There is nothing in the record to indicate that Pyle was not free to leave the room due to Trooper Kovach, or that Trooper Kovach did anything to prevent Pyle from leaving the room. The record indicates that Pyle remained in the room for medical treatment purposes.
 {¶ 23} We conclude that a reasonable person in Pyle's position would not have considered himself to be in police custody. While Pyle was restricted in his freedom of movement due to his need to obtain the necessary medical treatment for his injuries, the record does not demonstrate that he was deprived of his freedom of movement by Trooper Kovach. See Bowshier, supra. Thus, we conclude that Pyle's Miranda rights were not violated, because Trooper Kovach did not conduct a custodial interrogation. Therefore, we conclude that the trial court did not err in overruling Pyle's motion to suppress.
 {¶ 24} Pyle's sole Assignment of Error is overruled.
 III {¶ 25} Pyle's sole Assignment of Error having been overruled, the judgment of the trial court is affirmed.
Brogan and Grady, JJ., concur.