[Cite as *State v. Walker*, 2012-Ohio-847.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24542 |
| v. | : | T.C. NO. 10CR721 |
| DANIEL J. WALKER | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___2nd___ day of ___March___, 2012.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

JOYCE M. DEITERING, Atty. Reg. No. 0005776, 8801 N. Main Street, Suite 200, Dayton, Ohio 45415
  Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

 **{¶ 1}** After the trial court overruled his motion to suppress, Daniel Walker pled

no contest to possession of heroin, a fourth degree felony.[1]   As part of the negotiated plea, a charge of possession of drug abuse instruments was dismissed.   The trial court found Walker guilty and sentenced him to community control.

{¶ 2}     Walker appeals from his conviction, claiming that the trial court erred in denying his motion to suppress.   For the following reasons, the trial court's judgment will be affirmed.

I.

{¶ 3}     Detective David House and Officer Raymond Dine of the Dayton Police Department testified at the hearing on Walker's motion to suppress.   Their testimony revealed the following facts.

{¶ 4}     At approximately 8:00 p.m. on February 26, 2010, Detective House, a 19-year police veteran, was patrolling in an unmarked police vehicle in the 2100 block of South Edwin C. Moses Boulevard near Interstate 75.   The parking lots of the four businesses in that block, including a McDonald's restaurant, are well-known to the police as locations where drug transactions occur and where individuals gather to use illegal drugs that were purchased nearby.   House indicated that he specifically patrolled this area on a nightly basis looking for such activity.

{¶ 5}     As Detective House drove, he saw a white panel van parked on the west side of the McDonald's lot in a location where individuals involved in illegal drugs often park, due to its distance from the front doors to the restaurant and the fact that the drive-through

---

[1]The judgment entry states that Walker pled guilty to possession of heroin.   Based on the plea form that Walker signed, the trial court's reference to a guilty plea appears to be a typographical error.

window is on the other side of the building. House observed that the van had out-of-county license plates. He stated that many individuals come from outside of Montgomery County to purchase drugs. House ran the license plates through his on-board computer and found that the plates had expired in October 2009. The detective circled the restaurant and parked near the front of the building, where he could watch the van.

{¶ 6} Detective House saw that the van contained a driver, later identified as Michael Burcham II, and a passenger, later identified as Walker. House did not see either person eating in the van, and they did not go into the restaurant. As House watched, Walker got out of the passenger side and leaned back into the vehicle to manipulate something; House could not see what Walker had in his hands. Walker re-entered the vehicle. A couple of minutes later, Walker exited the vehicle and began to walk toward a trash can, but he stopped in the middle of the parking lot and returned to the van. The van then backed out of the parking space and headed toward the parking lot's exit. House did not, at any time, view the occupants in the van engaging in a drug transaction or using illegal drugs.

{¶ 7} At 8:10 p.m., Detective House drove around the restaurant in the opposite direction as the van, activated the red and blue flashing lights on the visor of his unmarked car, and stopped his vehicle. The white van stopped a few feet from the police vehicle, facing it. House testified that he stopped the van for the expired license plates and for a drug investigation.

{¶ 8} House got out of his vehicle, wearing a utility vest that identified him as a police officer. He illuminated the interior of the van with his flashlight, and shouted, "Dayton police." House could not see the hands of the men inside the van, and he observed

both individuals "moving frantically as if they were trying to hide something or retrieve something." House yelled, "Show me your hands," and moved toward the front of the van; neither individual complied. The detective then drew his weapon, pointed it at the driver through the front windshield, and again ordered the men to show their hands. Burcham complied. When Walker did not and kept reaching toward the floorboard area, House went to the driver's side window and yelled for Walker to show his hands; Walker did.

{¶ 9} Detective House got Burcham out of the vehicle, handcuffed him, patted him down, and had him sit on the curb. While doing so, House advised Burcham that he was not under arrest at that point and that he was being secured in handcuffs for the officer's safety. House then removed Walker from the van, advised that he was not under arrest, handcuffed him, patted him down, and sat him near Burcham. During Walker's patdown, the detective retrieved a box cutter tool from Walker's coveralls. House then radioed for back-up. As he waited, he notified the men of their *Miranda* rights. Both men indicated that they understood their rights and were willing to answer questions. House asked them from where they had come.

{¶ 10} After other officers arrived, Detective Hall spoke with Walker as House and another detective searched the front portion of the van. Detective House looked around the van's passenger's seat while Detective Reigle looked around the driver's seat. (House had informed Reigle that the driver had been reaching down toward the seat.) Reigle located a cellophane wrapper with ten gel caps, each with suspected heroin. House recovered $2,600 located in a glass jar in the center floorboard area of the front seat.

{¶ 11} Detective House returned to Burcham and asked him about the heroin.

Burcham stated that the heroin belonged to Walker. Detective Hall relayed to House that Walker was saying that the heroin belonged to Burcham. Both men were arrested for possession of heroin.

{¶ 12} Officer Dine reported to the McDonald's for the purpose of transporting Walker and Burcham, who had already been arrested, to jail. Prior to placing Walker into his cruiser, Dine searched Walker for any weapons or additional contraband. Dine discovered a hypodermic syringe in Walker's front right pants pocket. After Walker was placed in the cruiser, Dine observed him squirming in his seat. Walker was removed from the cruiser and searched again; no additional drugs or contraband were located.

{¶ 13} During the drive to the jail, Officer Dine continued to see Walker "making a lot of suspicious movements"; Walker was still squirming and appeared to be trying to raise his legs up to the bench seat and move his hands toward the bottom portion of his trousers. Burcham informed Dine that Walker was trying to place contraband in the back of the police car. After Walker was removed from the cruiser at the jail, Officer Dine recovered a baggie with thirteen capsules of heroin from the floorboard of the vehicle.

{¶ 14} Walker was indicted for possession of heroin and possession of drug abuse instruments. He moved to suppress all evidence obtained as a result of the stop of the van. A hearing on the motion was held on October 26, 2010. At the conclusion of the hearing, the trial court orally overruled the motion. Later, the court issued a written entry denying Walker's motion. Walker subsequently pled no contest to possession of heroin, and he was sentenced accordingly.

II.

{¶ 15} Walker's sole assignment of error states:

THE TRIAL COURT ERRED WHEN DENYING THE DEFENDANT-APPELLANT'S PRE-TRIAL MOTION TO SUPPRESS FINDING THE ARREST AND THE SEARCH WERE LAWFUL.

{¶ 16} In his assignment of error, Walker claims that the trial court erred in denying his motion to suppress, because (1) he was arrested, without probable cause, at the time of the initial traffic stop; (2) the warrantless search of the vehicle was impermissible due to lack of probable cause; and (3) the warrantless search of the vehicle was contrary to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

{¶ 17} In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268, citing *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. *Id.* In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. *Id.* However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." *Id*.

{¶ 18} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*,

2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

{¶ 19} At the outset, we agree with Walker that Detective House lacked a reasonable suspicion of drug activity when he stopped the van in the parking lot. House did not observe either occupant eating while they were seated in the van, but he also did not see any drug transactions or drug use by Walker or Burcham. The van's presence in a location away from the front door and drive-through window is itself innocent, or at most ambiguous, and not indicative, by itself, of criminal activity. Moreover, the fact that the van had out-of-county plates is also innocent, particularly since the McDonald's restaurant is located close to an exit from an interstate highway. "[T]he mere fact that this innocent or ambiguous conduct occurred in an area where crimes had occurred does not make it criminal in character or give rise to a reasonable suspicion of specific criminal activity." *State v. Belcher*, 2d Dist. Montgomery No. 24385, 2011-Ohio-5015, ¶ 31.

{¶ 20} Nevertheless, Walker acknowledges that the expired license plates created a lawful basis for Detective House to stop the van. A police officer may lawfully stop a vehicle if the officer has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Mays*, 119 Ohio St.3d 406,

2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8.   Once House learned that the van's license plates had expired, the detective was authorized to stop the vehicle.[2]

{¶ 21}   Walker contends that he was immediately arrested by Detective House when the officer approached the vehicle with his gun drawn and handcuffed him. According to Walker, this level of seizure exceeded a *Terry* stop and required the existence of probable cause.

{¶ 22}   It is well-established that not all seizures rise to the level of a formal arrest. As stated above, under *Terry*, police officers may conduct an investigatory detention that is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. *E.g.*, *State v. Keggan*, 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-6663, at ¶ 30.   "The test for determining if a seizure is an arrest rather than a *Terry*-type detention is if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."   *Id.*, citing *Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). "'A seizure is equivalent to an arrest when (1) there is an intent to arrest; (2) the seizure is made under the real or pretended authority; (3) it is accompanied by an actual or constructive seizure or detention; and (4) it is so understood by the person arrested.'   An arrest must be based on probable cause."   (Citation omitted.)   *State v. Lewis*, 2d Dist. Montgomery No 22726, 2009-Ohio-158, ¶ 23.

{¶ 23}   Detective House testified that he stopped the white panel van, in a high

---

[2]Walker argued to the trial court that Detective House could not initiate a traffic stop — and was precluded by Evid.R. 601(C) from testifying about the stop — because he was in an unmarked police vehicle and undercover attire.   See R.C. 4549.14; R.C. 4549.16.   The trial court rejected these arguments, and Walker has not challenged this ruling on appeal.

crime area, for the dual purposes of conducting a drug investigation and issuing a ticket for the expired license plates. Upon exiting his vehicle, House illuminated the interior of the van with his flashlight and shouted, "Dayton police." House drew a gun only after seeing Walker and Burcham "moving frantically as if they were trying to hide something or retrieve something" and after neither man responded to his initial command that they show their hands. House drew his weapon because he feared that the two men might be reaching for a weapon.

{¶ 24} The record further reflects that House removed Burcham and Walker from the vehicle and handcuffed them to ensure his safety. The stop occurred after dark, and House was alone with two individuals who may have hidden a weapon in their vehicle, a fact that "increases the possible sources of harm to the officer." *Maryland v. Wilson*, 519 U.S. 408, 413, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). House specifically informed both men that they were not under arrest and that they were being placed in handcuffs for his safety. After the men were placed on the curb, House requested back-up from other officers.

{¶ 25} Considering the totality of the circumstances, the detective's actions of drawing his gun and handcuffing Walker did not constitute an arrest. Given Walker's frantic movements below the dashboard upon being stopped by the police, his failure to comply when ordered to show his hands, and their location in a high crime area, House took reasonable actions to ensure his safety while initiating an investigatory detention. *See State v. Mayberry*, 2d Dist. Montgomery No. 23736, 2010-Ohio-4081.

{¶ 26} Walker next claims that the warrantless search of the van was

impermissible. He argues that House lacked probable cause to believe that the occupants had engaged in any criminal activity, other than driving in a car with expired plates. He further argues that the officers could not conduct a protective search of the vehicle once Burcham and Walker were handcuffed and placed on the curb.

{¶ 27} "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]" *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993); *State v. Molette*, 2d Dist. Montgomery No. 19694, 2003-Ohio-5965, ¶ 13. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence ***." *Evans* at 408, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶ 28} Similarly, the police may search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, if an officer possesses a reasonable belief that an individual is dangerous and may gain immediate control of weapons located in the vehicle upon returning to it. *Michigan v. Long* , 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *State v. Roye*, 2d Dist. Greene No. 2001-CA-5, 2001 WL 703869 (June 22, 2001).

{¶ 29} To justify a patdown search or the search of a passenger compartment, "the police officer must be able to point to specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. However, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27; *State v. Smith*, 56 Ohio St.2d 405, 407, 384 N.E.2d 280 (1978). The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews*, 57 Ohio St.3d at 87-88, 565 N.E.2d 1271, citing *State v. Freeman*, 64 Ohio St.2d 291, 295, 414 N.E.2d 1044 (1980).

{¶ 30} In this case, Detective House, a lone officer, initiated a traffic stop after dark in a high crime area. He testified that, after he activated his flashing lights, shone a flashlight into the van, and identified himself as a police officer, he observed Walker and Burcham frantically moving their hands near the floorboard, out of the officer's sight. The men did not immediately respond to his commands that they show their hands. The detective stated that he had concerns that they might "come up with a weapon." Under the totality of the circumstances, Detective House had a reasonable basis to believe that Walker or Burcham may have been armed and/or that a weapon may have been hidden in the front passenger area of the van. Accordingly, House was entitled to conduct a limited protective search for weapons for his safety.

{¶ 31} The lawfulness of House's protective search of the passenger area of the vehicle was not limited by the fact that the men were handcuffed and seated on the curb when the search occurred. House testified: "After checking the area where these individuals

had been reaching, if nothing had been discovered, Mr. Burcham would have been issued a citation for driving with an expired license plate. And both individuals would have been allowed to leave." Considering that, at the time of the search, it was likely that one, if not both, of the occupants would be permitted to return to the van, House acted reasonably when, out of a concern for the officers' safety, the van was searched for weapons prior to allowing Burcham and Walker to re-enter the vehicle. *See State v. Nelson*, 2d Dist. Montgomery No. 22718, 2009-Ohio-2546, ¶ 47.

{¶ 32} Finally, Walker claims that, if he were under arrest when the van was searched, the search was unlawful under *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485. *Gant* addressed whether the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement – set forth in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and applied to automobile searches in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) – permitted the search of a vehicle after a motorist was arrested and placed in the back of a patrol car.

{¶ 33} As stated above, we have concluded that Walker was not under arrest at the time the front passenger area of the van was searched for weapons, and there was a possibility that one or both of the men would be permitted to return to the vehicle. This matter did not involve a search incident to an arrest. Accordingly, the search of the van is governed by *Long*, and *Gant* does not apply.

{¶ 34} Walker's assignment of error is overruled.

III.

{¶ 35} The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

Copies mailed to:

Michele D. Phipps
Joyce M. Deitering
Hon. Frances E. McGee