**[Cite as *State v. Moody*, 2012-Ohio-3390.]**

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellant                   :          C.A. CASE NO.    24947

v.                                              :          T.C. NO.    11CR2181

CORY L. MOODY                                   :          (Criminal appeal from
                                                           Common Pleas Court)

    Defendant-Appellee                    :

                                                :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the ____27th____ day of ____July____, 2012.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W.
Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellant

MICHAEL P. DAILEY, Atty. Reg. No. 0085986, Assistant Public Defender, 117 S. Main
Street, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . .

CUNNINGHAM, J. (by assignment)

{¶ 1}  The State of Ohio appeals from a  judgment of the Montgomery

County Court of Common Pleas, which granted Cory Moody's motion to suppress statements Moody made to police officers. Specifically, the trial court concluded that Moody was interrogated about his suspected possession of crack cocaine, while in custody, without having been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 2} The trial court reasonably concluded that Moody was in custody when he made his statements. However, the court erred in concluding that Moody's statements resulted from an interrogation, because the officers did not engage in conduct that was likely to elicit a response. Accordingly, the judgment of the trial court will be reversed.

*Facts and Procedural History*

{¶ 3} Officers Michael Wolpert and Theodore Troop testified for the State at the suppression hearing. The officers' testimony established the following facts:

{¶ 4} In the early evening of June 7, 2011, while returning from another call, Wolpert and Troop, who were partners, decided to drive through the Desota-Bass apartment complex, which was known to them as a high-crime area. As the officers approached 904 Wilberforce Place, they saw Moody standing on a stoop that was several steps above the ground; several other individuals were standing on the ground around the stoop. The officers did not observe any suspicious movements by the members of the group, but the people standing on the ground began to move away from the stoop as the officers approached. When officers drew closer, Officer Wolpert saw, from the cruiser, what he believed to be a baggie containing crack cocaine next to Moody's foot on the stoop; the suspected crack cocaine was "approximately the size of a Jolly Rancher" candy.

{¶ 5} Moody stepped off the stoop as the officers exited their cruiser. Officer Wolpert "grabbed on" to Moody in the back of his waistband to avoid a "foot chase," then asked Officer Troop to place Moody in the back of the cruiser. The officers did not speak to Moody before or while grabbing him, patting him down, and placing him in the cruiser with the door closed. Troop obtained identifying information from Moody while they sat inside the cruiser, while Wolpert collected the baggie. Moody was not read his *Miranda* rights during this time and, according to Troop, in response to Moody's questions about what was going on, Troop merely told him to "be patient." When one of the people who had been standing around the stoop asked Officer Wolpert "what [Moody] was being arrested for," Wolpert responded "drug possession."

{¶ 6} Officers Wolpert and Troop gave differing accounts of when and where the suspected crack cocaine was field-tested. According to Wolpert, he placed a small sample on a piece of paper and conducted the test in the front seat of the cruiser, while Troop sat beside him. According to Troop, Wolpert conducted the test outside the vehicle, presumably near the trunk where the supplies were stored; then Wolpert entered the cruiser and informed Troop about the result. It is undisputed, however, that Wolpert's statement to Troop about the positive reaction was made while the officers were seated in the front of the cruiser and Moody was seated in the back seat, and that Moody had not yet been informed of his rights pursuant to *Miranda* at this point. In response to Wolpert's statement, Moody made "an excited utterance" (according to Wolpert) that he knew he had been standing over crack cocaine on the stoop. After making this statement, Moody was advised of his *Miranda* rights. He subsequently made additional incriminating statements, including that "everyone

out here slings dope" and a comment about the approximate weight of the crack cocaine.

{¶ 7}   The officers' testimony disagreed about when Moody was placed in handcuffs; Wolpert indicated that Moody was handcuffed before he was placed in the cruiser, and Troop stated that he was handcuffed after the field test and after he was read his rights. According to Troop, the encounter lasted about fifteen minutes before Moody was transported downtown.

{¶ 8}   Moody was charged with possession of crack cocaine in an amount in excess of one gram but less than five grams, in violation of R.C. 2925.11(A).   He pled not guilty and filed a motion to suppress the statements he made to the police officers.   After a hearing on the motion, the trial court granted the motion to suppress.

{¶ 9}   The State appeals, raising one assignment of error.

**Moody was not subjected to custodial interrogation when he volunteered that he knew he was standing over crack cocaine.   The statement was admissible.**

{¶ 10}   The State's argument is two-fold.   First, it contends that Moody was not in custody when he made the statement acknowledging the presence of crack cocaine at his feet, and therefore the officers had not been required to advise him of his *Miranda* rights. Second, it claims that, even if Moody were in custody at the time of his statement, the statement was spontaneously made and not the result of police interrogation.

{¶ 11}   In addressing a motion to suppress, the trial court assumes the role of the trier of fact. *State v. Hollowell*, 2d Dist. Montgomery No. 24010, 2011-Ohio-1130, ¶ 20; *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002 WL 63196, *1 (Jan. 18, 2002),

citing *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The court must determine the credibility of the witnesses and weigh the evidence presented at the hearing. *Hollowell* at ¶ 20. In reviewing the trial court's ruling, an appellate court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. *Id*. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." *Id.*

### *Custody*

{¶ 12} Until suspects are "in custody," they do not have a right to warnings under *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. *See, e.g., State v. Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 13*; State v. Frady*, 142 Ohio App.3d 776, 780, 757 N.E.2d 12 (2d Dist.2001). Custodial interrogation is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *State v. Roberts*, 32 Ohio St.3d 225, 226, 513 N.E.2d 720, n.1 (1987), quoting *Miranda*, 384 U.S. at 444. In order to determine if a person is in custody for purposes of *Miranda*, the court must determine whether there was a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

{¶ 13} A seizure equivalent to an arrest exists where there is: (1) an intent to arrest, (2) the seizure is made under real or assumed authority, (3) accompanied by an actual or constructive seizure of the person, and, (4) which is so understood by the person arrested. *State v. Walker*, 2d Dist. Montgomery No. 24542, 2012-Ohio-847, ¶ 22; *State v. Pyle*, 2d

Dist. Greene No. 2003-CA-35, 2003-Ohio-6664, ¶ 14.   "A seizure is an arrest * * * if a 'reasonable person' in the suspect's position would have understood the situation to constitute a restraint on his freedom of movement of the degree the law associated with formal arrest."   (Internal citations omitted.)   *Pyle* at ¶ 14.   The mere fact that an individual is sitting in the back seat of a police cruiser, with rear doors that do not open from the inside, without more, is not sufficient to establish custody. *State v. Harris*, 2d Dist. Montgomery No. 13279, 1992 WL 317447, *5 (Nov. 3, 1992).   But if the police take actions that would lead a reasonable person in the defendant's position to believe that he was going to be detained indefinitely, the encounter is custodial. *State v. Wilkins*, 2d Dist. Montgomery No. 20152, 2004-Ohio-3917, ¶ 20.

{¶ 14}   The trial court concluded that, based on the officers' conduct, which included grabbing Moody by his waistband, patting him down, and placing him in the back seat of the cruiser, a reasonable person in Moody's position would have believed that he was under arrest.   We also note that the officers provided no explanation to Moody about their actions, Officer Troop refused to answer Moody's questions about what was happening, and Officer Wolpert stated to one of the other people at the scene that Moody was being arrested for drug possession.   It appears, from the record before us, that this statement was made prior to or simultaneously with Moody being placed in the cruiser.   Under these facts, the trial court reasonably concluded that the elements of an arrest were present, that a reasonable person in Moody's position would not have felt free to leave, that he was in custody, and that *Miranda* warnings were required prior to any interrogation.   Thus, we reject the State's argument that the trial court erred in concluding that Moody was in custody.

*Interrogation*

**{¶ 15}** The State further argues that, even if Moody were in custody, his statements should not have been suppressed, because his statements were "volunteered" and he was not interrogated.

**{¶ 16}** Interrogation includes express questioning as well as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Fair*, 2d Dist. Montgomery 24120, 2011-Ohio-3330, ¶ 40, citing *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.) and *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). But "[p]olice officers are not responsible for unforeseeable incriminating responses." *Fair* at ¶ 40, citting *State v. Waggoner*, 2d Dist. Montgomery No. 21245, 2006-Ohio-844, ¶ 14. Statements made on the subject's own initiative, in the absence of questions or other conduct by police, do not constitute "interrogation." *State v. Johnson*, 2d Dist. Montgomery No. 20624, 2005-Ohio-1367, ¶ 25, citing *City of Akron v. Milewski*, 21 Ohio App.3d 140, 487 N.E.2d 582 (9th Dist.1985).

**{¶ 17}** In ruling on this issue, the trial court first stated that, "based upon the content and demeanor" of the officers' testimony, it found Officer Troop "more credible" as to when and where the crack cocaine was tested. As such, the trial court credited Troop's testimony that Wolpert tested the substance before he entered the cruiser, rather than Wolpert's testimony that he conducted the test in the front seat. The court continued:

> * * * Officer Wolpert would have known and did know defendant

would be hearing this declarative statement made * * * to Officer Troop * * * that he had tested it and confirmed that it was crack cocaine.   * * * And it was at this point this court finds by preponderance of the evidence the defendant then stated: I knew it was crack cocaine that I was standing over.

    * * *

    * * * [T]his statement the court finds that Officer Wolpert or a reasonable officer would know to be overheard by the individual, the suspect in the back of the cruiser.  These were words that are not words normally attendant to an arrest in custody.

    They were words that police and Officer Wolpert should have reasonably or should have known was [sic] reasonably likely to elicit an incriminating response from the suspect so it was the equivalent of an interrogation done without *Miranda* and so that statement was obtained in violation of *Miranda*.

In other words, the trial court concluded that Wolpert should have known that his comment, in Moody's presence, about the outcome of the field test was likely to elicit an incriminating response, and that Wolpert's comment was not a comment "normally attendant" to an arrest.

{¶ 18}   In our view, however, an officer sharing the result of a field test with another officer while detaining a suspect for drug possession is a routine, necessary communication and does not, without more, suggest that the officers were attempting to evoke a response from the suspect.  Officer Wolpert made a straightforward statement to his partner about the field test result; the officers did not engage in a lengthy conversation, nor

was the conversation framed in such a way as to encourage a response from Moody. We see no "measure of compulsion above and beyond that inherent in custody itself" under the facts presented in this case. *Innis,* 446 U.S. at 300, 100 S.Ct. 1682, 64 L.Ed.2d 297. Thus, the trial court erred in concluding that Moody's statement was the result of an interrogation.

{¶ 19}    Although we accept the trial court's findings of fact, which are supported by competent, credible evidence, we must independently review whether those facts meet the appropriate legal standard. *Hollowell*, 2d Dist. Montgomery No, 24010, 2011-Ohio-1130, ¶ 20. In our view, the trial court properly concluded that Moody was in custody when he made his statements to the police. However, the trial court erred in concluding that Moody's statement was a product of police interrogation. Accordingly, the State's assignment of error is sustained.

{¶ 20}    The judgment of the trial court will be reversed, and this matter will be remanded for further proceedings.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

(Hon. Penelope R. Cunningham, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Kirsten A. Brandt
Michael P. Dailey
Hon. Dennis J. Langer