[Cite as *State v. Reece*, 2016-Ohio-7805.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 27058 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2015-CR-3991 |
| v. | : | |
| | : | (Criminal Appeal from |
| DAMION K. REECE | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of November, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

CHRISTOPHER B. EPLEY, Atty. Reg. No. 0070981, Christopher B. Epley Co., L.P.A., 100 East Third Street, Suite 400, Dayton, Ohio 45402
      Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} The State appeals from an order of the trial court suppressing evidence. The

State contends that the trial court erred by concluding that the police officer did not have

a reasonable articulable suspicion to justify a pat-down search for officer safety. Defendant-appellee Damion Reece contends that the trial court correctly concluded that the facts did not support a conclusion that the officer had a reasonable, articulable belief that Reece was armed and dangerous.

{¶ 2} We conclude that the trial court did not err in sustaining the motion to suppress. The State's sole assignment of error is overruled, and the suppression order is Affirmed.

### I. Reece Is Questioned in the Course of an Investigation

{¶ 3} In December 2015, a two-year-old child was shot, and the Dayton police were following leads to locate the shooting suspect. The police were able to ping the suspect's cell phone to a location in the parking lot of the Westown Shopping Center. When three detectives arrived at the shopping center, they observed Reece sitting in the passenger side of an SUV in the parking lot. Reece had his hood up that partially covered his head, and was looking down as if he was playing on his cell phone. The detectives approached the vehicle with weapons drawn, and Reece complied with an order to place his hands up. Detective Daugherty opened the passenger door, saw Reece's face, and concluded that Reece was not the person they had identified as the shooting suspect. Reece cooperated with the detective's request to identify himself and to produce identification. When Reece reached toward his left rear pocket to reach for his wallet with his left hand, his right arm moved toward his left side covering his waist area. The detective described what he saw as follows:

Q: [W]hat happened after you asked him for his identification?

A: Well, as he - - he was sitting in the car. So he's got his hands up. I ask him for his identification. And, you know, he goes like to reach for his, you know, his wallet in his back pocket. And, at the time, he takes his right hand and he kind of covers his waistband area. And it just looked really strange to me. So I was like you don't have any weapons on you or anything. And he said no. So I started reaching toward his waistband. I said well, I'm going to have to check you to make sure you don't have any weapons. And as I reached for his waistband, he shoves my hand away with this hand.

Q: Okay.

A: So, at that time, I take my left hand and I just kind of push it up against his chest to push him back and I tell him don't move. And then I grab for his waistband and I feel the gun in his waistband.

Q: Why did you find it was odd how he had positioned his right hand when he was reaching for his wallet?

A: It just looked like he was hiding, you know, he was hiding something because, I mean, if I'm going to reach my wallet, I'm going to lean in and reach my wallet. I mean as he did it, he just like covers his, kind of like away, turns kind of away from me, kind of covering up with his right arm.

Transcript at pgs. 14-15.

**{¶ 4}** On cross examination, the detective testified:

Q: So if I'm following along correctly, you wanted to confirm that it

wasn't an associate of Mr. Gray's or a friend or a relative and you wanted also to still try to locate the cell phone.

A: Correct.

Q: So you asked Mr. Reece for his ID.

A: His identification, yes.

Q: Okay. And it's your testimony today that as he reached for his ID he pulled, he protected himself, basically –

A: Yes.

Q: With his off hand.

A. That's correct.

Q. All right.

THE COURT: I guess I didn't follow that. You said, "he protected himself"?

Mr. Rambo [representing Reece]: Well, maybe protect is not the right word.

By Mr. Rambo: But I think your testimony was that he kind of guarded.

A: Yeah.

Q: Did you use the word guarded?

A: To me, like I said, it looked very strange, I mean, he's sitting here. If I'm asking for ID I'm going to like maybe lean forward to get my wallet out. He kind of, you know, like kind of turns a little bit to reach for his wallet and as he brings his hand up like this to kind of conceal like his waistband.

Transcript at pgs. 27-28.

{¶ 5} Detective Daugherty stated that he has 18 years experience as a police officer, including 11 years as a detective and that the location where Reece was found is a high-crime area with a lot of violent crime, including weapon offenses. Transcript at pg. 19. Detective Daugherty testified that the shooting had occurred approximately four hours before his interaction with Reece, at a location that was "a couple" miles away from the shopping center. Transcript at pg. 22. Detective Daugherty also stated that before he conducted the pat-down he confirmed that Reece was not the shooting suspect. Transcript at pgs. 26-29.

## II. The Course of Proceedings

{¶ 6} Reece was indicted on one count of Carrying a Concealed Weapon, a felony of the fourth degree, in violation of R.C. 2923.12(A)(2), and one count of Weapons Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(2). At the suppression hearing, the only witness who testified was Detective Brad Daugherty. Based on the evidence presented at the hearing, the trial court issued a written decision sustaining the motion to suppress. The trial court made specific findings of fact, including:

1. At the time the Detective requested the Defendant produce his identification, the Detective knew the Defendant was not suspect Gray;

2. When the Defendant was requested to produce identification, he went to his left back pocket with his left arm and retrieved his wallet; at the same time, his right arm went towards the left of his body as he was moving

to get access to his wallet;

3. The Defendant did not "reach" for anything or make any furtive movement.

Dkt. #19 at pg. 2-3.

{¶ 7} The trial court further noted that it had the opportunity to observe the right arm motion demonstrated by Detective Daugherty on the witness stand, and based on that observation, it concluded that the movement of Reece's right arm, as he was reaching for his wallet with the left arm, was a natural movement and not a furtive gesture. The trial court concluded that the movement of Reece's right arm as he retrieved his wallet was not sufficient to support a reasonable belief that Reece was armed and dangerous to justify a pat-down search for weapons. From the order suppressing evidence, the State appeals.

### III. Standard of Review

{¶ 8} "Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting the facts as true, the reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Id.* Therefore, an appellate court reviews the trial court's application of the law to its factual findings based on a de novo standard of

review. *State v. Belton*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1581, ¶ 100.

**IV. Based Upon the Trial Court's Findings, which Are Supported by Evidence in the Record, the Trial Court Did Not Err in Concluding that Detective Daugherty Lacked Reasonable, Articulable Suspicion that Reece Was Armed**

{¶ 9} The State alleges one assignment of error as follows:

THE TRIAL COURT ERRED IN FINDING THAT DETECTIVE DAUGHERTY LACKED REASONABLE ARTICULABLE SUSPICION TO BELIEVE THAT REECE WAS ARMED AND DANGEROUS BEFORE PATTING HIM DOWN

{¶ 10} The State argues that when looking at the totality of the circumstances, the detective on the scene had a reasonable basis to conduct a pat-down search for officer safety. The only reason the detective had contact with Reece was because Reece was in the vicinity of the cell phone of a shooting suspect, but before the pat-down occurred, the detective knew that Reece was not that suspect. The basis for the pat-down search was the movement Reece made with his right arm, as he reached for his wallet with his left arm. Detective Daugherty described the movement as strange, leading him to believe that Reece might be hiding or concealing something.

{¶ 11} "[A]n officer must have a reasonable individualized suspicion that the suspect is armed and dangerous before he may conduct a patdown for weapons." *State v. Roberts,* 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18, citing *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the

circumstances would be warranted in the belief that his safety or that of others was in danger." (Citations and footnote omitted.) *Terry* at 27, 88 S.Ct. 1868. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271 (1991).

{¶ 12} We have held that "[w]hile the nature of an area as a high-crime area is a factor to be considered in determining whether a protective search is warranted, that factor alone is insufficient to justify a protective search." *State v. Wilcox,* 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E. 2d 597, ¶19 (2d Dist.). We have also held that "although furtive movements alone would not be sufficient to justify a search, they can be considered in making a totality-of-the-circumstances determination." *State v. Abner*, 194 Ohio App.3d 523, 2011-Ohio-4007, 957 N.E. 2d 72, ¶ 12 (2d Dist.). "A furtive gesture may be defined as a situation where 'police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband and then observe that person make an apparent attempt to conceal that object from police view.' " *Id.,* quoting *State v. Allen,* 2d Dist. Montgomery No. 23738, 2010-Ohio-3336, ¶ 31.

{¶ 13} In the case before us, we defer to the trial court's finding that Reece did not reach for anything or make any furtive movement. Besides the general requirement that we give appropriate deference to a trial court's findings of fact, in the case before us the trial court observed Detective Daugherty's demonstration of Reece's right-arm

movement, as a result of which it is in a better position than we are to evaluate the extent to which that movement could give rise to a reasonable suspicion that Reece was armed. Without a furtive movement, the only relevant facts are that Reece was located in a high crime area, approximately 2 miles from the scene of a shooting that had occurred four hours earlier.

{¶ 14} Based on the totality of the circumstances, we conclude that the trial court did not err in finding that Detective Daugherty did not have a reasonable, articulable suspicion that Reece might be armed and dangerous. At the time Detective Daugherty made a decision to pat down Reece, he knew that Reece was not the suspect in the investigation, and Reece had fully cooperated with the officers' demands and questions. The State's sole assignment of error is overruled.

### IV. Conclusion

{¶ 15} The State's sole assignment of error having been overruled, the order of the trial court suppressing evidence is Affirmed.

. . . . . . . . . . . .

DONOVAN, P.J, concurs.

HALL, J., dissenting:

{¶ 16} I disagree. Detective Brad Daugherty testified he has been employed by the Montgomery County Sheriff's office for almost 18 years. He was investigating the shooting of a two year old a few hours earlier by a suspect named Nickolai Gray. He obtained Gray's cell phone number and was tracking the pings emitted from that phone. The pings were coming from within 14 meters, about 45 feet, of the second row of the Westown

shopping center parking lot. In the second row was a maroon SUV occupied by "a younger black male in the passenger seat. He had his hood up." No other vehicles or people were in the described area. The detective and other officers approached with their guns drawn because they were "potentially dealing with a suspect that had just shot a two-year-old child." When Daugherty opened the passenger door and got a look at the passenger he didn't look like Gray so Daugherty asked what he was doing and asked for identification. The remaining salient parts of the encounter are quoted in the majority opinion; in particular is testimony of the detective's observation that Reece made an odd movement covering up his waistband with his right arm. When Daugherty reached toward that area, but apparently before any pat down occurred, Reece shoved Daugherty's hand away. "I figured he's got a gun or something."

{¶ 17} In my opinion, viewing the events "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold," *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991), leads to the conclusion that Daugherty had a reasonable articulable suspicion that Reece was armed. What was expressed as a finding of fact by the trial court, that Reece did not reach for anything or make a furtive movement, is in my view a mixed question of law and fact and does not benefit from the requirement of deference. Moreover, that determination does not view the events through Daugherty's eyes.

{¶ 18} Because I believe Daugherty had a reasonable and articulable suspicion to pat down Reece, I would sustain the assignment of error and reverse the decision granting the motion to suppress. Therefore I dissent.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Christopher B. Epley
Hon. Richard Skelton