[Cite as *State v. Cook*, 2019-Ohio-3918.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-810 |
| | : | |
| TIMOTHY COOK, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of September, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

JOHN S. PINARD, Atty. Reg. No. 0085567, 120 West Second Street, Suite 603, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Timothy Cook, Jr. appeals from his conviction for improper handling of a firearm in a motor vehicle, which followed the trial court's decision overruling his motion to suppress evidence obtained as a result of a traffic stop and search of his vehicle. We conclude that the stop and search did not violate the Fourth Amendment. Thus, the trial court's judgment will be affirmed.

**Facts**

{¶ 2} On December 6, 2018, at approximately 3:40 p.m., following the end of his duty shift, Clark County Sheriff's Sergeant Ralph Underwood was driving home in a marked cruiser. A male driver, who was accompanied by a "younger female," pulled his vehicle alongside Underwood's cruiser "in a panic" and motioned to Underwood to "roll down the [cruiser's] window." The individual then informed Underwood that "the guy behind [Underwood] in the white car [was] waving a gun." Because Underwood's immediate "focus was on the car behind [him] which supposedly had a gun," Underwood did not obtain the informant's identifying information.

{¶ 3} Underwood radioed dispatch to request assistance. Clark County Sheriff Deborah Burchett arrived soon thereafter. Underwood then initiated a stop of Cook's vehicle. Based upon the reported gun, Underwood approached Cook's vehicle with his service weapon drawn. Cook and his passenger were ordered out of the vehicle and handcuffed. Underwood advised Cook and the passenger they were being handcuffed for everyone's "protection," and that "if it works out…I'll let you go."

{¶ 4} At this point, Burchett advised Underwood there was a mask in plain view on the "passenger side" of Cook's vehicle. The mask, referred to by the parties as an "opera

mask" and depicted in photographic exhibits 2 and 3, depicted a male face. At this juncture, Underwood looked under the vehicle's passenger seat and observed a semi-automatic handgun. An unattached magazine was located beside the handgun. Cook was administered *Miranda* warnings, and, upon questioning, he admitted he owned the handgun.

**{¶ 5}** Cook was indicted for improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B), a fourth degree felony. Cook filed a motion to suppress the handgun and his post-*Miranda* statements. After conducting a hearing, the trial court overruled the suppression motion. Cook thereafter entered a no contest plea and was found guilty. The trial court sentenced Cook to a six-month prison term. This appeal followed.

## Analysis

**{¶ 6}** Cook raises two assignments of error as follows:

The officer lacked a reasonable, articulable suspicion to effectuate a traffic stop based solely on an anonymous tipster with no independent corroboration;

The officers lacked probable cause to search the vehicle based solely on an uncorroborated anonymous tip and [the discovery of] a black opera mask.

## Standard of Review

**{¶ 7}** An appellate court, when reviewing a motion to suppress decision, must

accept the trial court's factual findings as long as the findings are supported by credible evidence. *State v. Walker,* 2d Dist. Montgomery No. 24542, 2012-Ohio-847, ¶ 17. But an appellate court's review of the legal conclusions drawn from those facts is de novo. *Id.*

## The Stop

{¶ 8} Based upon the informant's purported anonymous status and the absence of corroboration of the informant's information, Cook asserts that Underwood did not possess a reasonable, articulable suspicion of criminal activity, and thus, the stop violated the Fourth Amendment.

{¶ 9} Informants are classified into three basic, but on occasion "somewhat blurred," groups: (1) the anonymous informant, (2) the known (often criminally connected) informant who has previously provided reliable information, and (3) the known citizen informant. *State v. Gregory,* 2d Dist. Montgomery No. 28240, 2019-Ohio-3000, ¶ 24 quoting *Maumee v. Weisner,* 87 Ohio St.3d 295, 300, 720 N.E.2d 507 (1999). Irrespective of the informant's status, when the police execute an investigative stop based exclusively on an informant's tip, the stop's legality is determined by an assessment of the informant's reliability and, assuming the tip's reliability, whether the tip established a reasonable, articulable suspicion that the person to be stopped was, or was about to be, engaged in criminal activity. *State v. Lester,* 2d Dist. Montgomery No. 27762, 2018-Ohio-3601, ¶ 33, quoting *State v. Hamilton,* 1st Dist. Hamilton No. C-160247, 2017-Ohio-8140, ¶ 13, citing *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In this case, the tip, if reliable, established a reasonable suspicion that Cook was engaged in criminal activity. Thus, our determination turns on the informant's reliability. The reliability

judgment is based upon the totality of circumstances including the informant's status and basis of knowledge. *Id.*

{¶ 10} An uncorroborated anonymous tip is " 'seldom [sufficient to] demonstrate[e] the informant's basis of knowledge or veracity' " but even so, "under appropriate circumstances, an anonymous tip can demonstrate 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigative stop.' " *Navarette v. California,* 572 U.S. 393, 397, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), quoting *Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412, 100 L.Ed.2d 301 (1990).

{¶ 11} In contrast, "an identified citizen informant is accorded a 'greater degree of reliability' [than an anonymous tipster] and 'therefore, a strong showing as to the other indicia of reliability [i.e. indicia other than the classification of the informant] may be unnecessary.' " *State v. Pickett,* 2017-Ohio-5830, 94 N.E.3d 1046, ¶ 11 (2d Dist.), quoting *State v. Carrocce,* 10 Dist. Franklin No. 06AP-101, 2006-Ohio-6376, ¶ 32, quoting *City of Weisner* at 300-301. Thus, when "a citizen-informant * * * is victimized or merely witnesses a crime and reports it out of a sense of civic duty, the police may be entitled to presume that the informant is reliable." *Pickett* at ¶ 11, quoting *Carrocci* at ¶ 32. (Other citations omitted.)

{¶ 12} Based upon Underwood's failure to obtain the informant's identifying information or to corroborate the tip, Cook argues that the informant was appropriately classified as an unreliable anonymous tipster. The circumstances surrounding the tip suggests otherwise. In contrast to a true anonymous tipster who acts to conceal his identity, the citizen in this case openly contacted Underwood on a public street. The informant, upon making contact, could not know that Underwood would not obtain his

identifying information, Underwood's immediate, and understandable, focus upon the informant's information did not make the informant a mere anonymous tipster. The informant's open, public contact with Underwood was, instead, consistent with a citizen, albeit not identified, who, out of civic duty, reports criminal conduct he has witnessed. As noted, the categories, as here, are not always neat and tidy. But the categories are simply a tool used to assist in the ultimate determination of the informant's reliability.

{¶ 13} Based upon the informant's face-to-face, contemporaneous, and panicked report of a startling event (the waving of a gun in the vehicle directly behind Underwood's cruiser), we conclude that the informant's tip was reliable. This reliability allowed Underwood "to credit the [informant's] allegation" that the driver of the vehicle positioned directly behind his cruiser had been waving a gun. *See Navarette* at 399. Given this, the stop was a proper investigative stop under the Fourth Amendment and under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**The Search**

{¶ 14} Cook next argues that the search of his vehicle was not supported by probable cause. In response, the state asserts that the search was supported by probable cause that a handgun was present within the vehicle under the totality of circumstances, including the discovery of the mask. However, consistent with our investigative stop determination, we conclude that Underwood's search of the vehicle's passenger compartment was a protective weapons search sanctioned by *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). In *Long,* the Supreme Court concluded that the protective pat down search for weapons authorized by *Terry* may extend to a

vehicle's passenger compartment.[1] Consistent with *Terry*, such a search is permissible when an officer, upon making an investigative stop involving a vehicle, has a reasonable belief, based upon specific, articulable facts, that the person stopped is dangerous, that a weapon may be within the vehicle's passenger compartment, and that the suspect, upon his return to the vehicle, could gain immediate control of a hidden weapon. *Long* at 1049. *See also State v. Walker,* 2d Dist. Montgomery No. 24542, 2012-Ohio-847, ¶ 28; *State v. Roye,* 2d Dist. Greene No. 2001-CA-5, 2001 WL 703869, *3 (June 22, 2001).

{¶ 15} We have already concluded that Underwood's stop of Cook's vehicle was authorized based upon the reasonable suspicion that, just before the stop, Cook had been waving a handgun inside the vehicle. This conclusion also supported the reasonable, prudent belief that Cook was dangerous and a handgun was within the vehicle. Finally, assuming the investigative stop did not otherwise reveal a handgun, Cook would have had immediate access to such a handgun upon the stop's completion and his return to the vehicle. Under these facts, we conclude that Underwood's search of the vehicle's passenger compartment was a protective weapons search that did not violate the Fourth Amendment.

{¶ 16} Cook's assignments of error are overruled.

## Conclusion

---

[1] *Terry*, of course, allows an officer conducting an investigative stop to perform a weapons patdown search when the officer has a "reasonable individualized suspicion that the suspect is armed and dangerous * * *." *State v. Reece,* 2d Dist. Montgomery No. 27058, 2016-Ohio-7805, ¶ 11, quoting *State v. Roberts,* 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18, citing *Terry* at 27. The constitutionality of a weapons patdown search turns on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

{¶ 17} Having found that neither the stop nor the search violated the Fourth Amendment, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

John M. Lintz
John S. Pinard
Hon. Douglas M. Rastatter