**[Cite as *State v. Wood*, 2023-Ohio-2973.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-36 |
| | : | |
| v. | : | Trial Court Case No. 21 TRD 06293 |
| | : | |
| MICHAEL WOOD | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 25, 2023

. . . . . . . . . . .

THOMAS M. KOLLIN, Attorney for Appellant

ERIN J. MCENANEY, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Michael Wood appeals from his conviction in the Clark County Municipal Court following a jury trial on one count of driving under OVI

suspension, a first-degree misdemeanor. Wood contends that the trial court erred by denying his motion to suppress evidence, because the police initiated the traffic stop without reasonable articulable suspicion of criminal activity, and that the trial court's factual findings were against the manifest weight of the evidence. For the following reasons, we affirm the judgment of the trial court.

## I.    Facts and Procedural History

**{¶ 2}** As the result of a traffic stop that occurred on April 26, 2021, Wood was charged with one count of driving under an OVI court suspension, in violation of R.C. 4510.14(A); one count of operating a motor vehicle with no operator's license with a prior conviction, in violation of R.C. 4510.12; one count of driving under a non-compliance suspension, in violation of R.C. 4510.16; one count of license forfeiture, in violation of R.C. 4510.111; and one count of failure to reinstate a license, in violation of R.C. 4510.21.

**{¶ 3}** On July 20, 2021, Wood filed a motion to suppress in which he challenged the validity of the traffic stop and the admissibility of any statements made without the benefit of having been read his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After several continuances, a hearing was held on the motion on March 18, 2022. The State presented the testimony of German Township Chief of Police Michael Stitzel and German Township Police Officer Amy Mosier. The following evidence was presented:

**{¶ 4}** Chief Stitzel testified that he had been a police officer since July 1993 and had been with the German Township Police Department since 1999. On April 26, 2021, Chief Stitzel was driving an unmarked police car on Upper Valley Road heading toward

the east side of Tremont to check on a report of illegal dumping. As he was driving southbound, Chief Stitzel observed a distinct yellow pickup truck heading northbound on Upper Valley. Because Stitzel was familiar with Wood from previous encounters and had known Wood to drive the yellow truck, he slowed down to look at the driver when the vehicles passed each other. He positively identified Wood as the driver, and he believed Wood was under a license suspension at the time. Thereafter, Stitzel turned his car around to follow Wood and confirmed through dispatch that Wood's license was suspended. As Chief Stitzel followed Wood's truck, he called out to a uniformed police officer to conduct a traffic stop on Wood's truck because Wood was driving under suspension. While Stitzel was waiting for a uniformed officer to arrive, Wood stopped at a house on Hominy Ridge Road. Chief Stitzel pulled around the corner to wait for the uniformed officer to arrive and for Wood to get back into the truck and leave the house.

{¶ 5} When Wood left a few minutes later, Chief Stitzel observed Wood again driving the truck and noticed a crack on the truck's windshield. According to Stitzel, he also observed that the county sticker and the validation sticker on the license plate were not clearly visible as required by law. Stitzel continued to follow Wood until a marked police car, driven by Officer Eddington, was able to conduct a traffic stop of Wood near the old Village of Lawrenceville in German Township, Clark County, Ohio. Once the traffic stop was initiated, Chief Stitzel turned on his body camera; a copy of the video recording was submitted as evidence at the suppression hearing.

{¶ 6} On April 26, 2021, Officer Mosier, a law enforcement officer since 2014, worked for the German Township Police Department. On that day, she was wearing her

police issued uniform and was a passenger in a marked patrol car driven by Officer Eddington. While on routine patrol, Officer Mosier heard Chief Stitzel contact dispatch regarding Wood and overheard on the radio that Wood's license was suspended. Officers Eddington and Mosier responded to the area and conducted a traffic stop of Wood. Chief Stitzel also assisted with the stop.

{¶ 7} Once Wood's car was stopped, Officer Mosier noticed that the license plate sticker was not compliant and observed a crack in the windshield. Therefore, she informed Wood that he had been stopped because he had a suspended license and because of the validation stickers on the back of his vehicle. Chief Stitzel further informed Wood that the windshield was cracked.

{¶ 8} During the stop, Officer Mosier misread some of the information on Wood's insurance papers, which resulted in her identifying the insurance as expired when it was not actually expired. Additionally, there was some confusion during the stop as to whether the license plate was registered to a different vehicle. However, while Officer Mosier worked on writing the traffic citation, the other officers checked the vehicle identification number and were able to resolve the issue. Officer Mosier was responsible for completing the paperwork and obtained information from dispatch regarding Wood's prior suspensions. Dispatch confirmed that Wood was under 55 different suspensions, so it took a while for Officer Mosier to obtain the necessary information needed to complete the citation. Additionally, there was a new dispatcher working who had difficulty providing the necessary information to Officer Mosier.

{¶ 9} Copies of Officer Mosier's and Officer Eddington's body camera videos were

submitted as evidence at the suppression hearing; they reflected that Wood was never placed in handcuffs or arrested. Rather, he was given a citation and his passenger, the owner of the vehicle, was allowed to drive the truck away. Although no one testified as to the time of day the traffic offense occurred, the video recordings reflected that it was daytime with clear skies and sunshine. The entire traffic stop lasted approximately 30 minutes. Additionally, a photograph of the truck's license plate was submitted as a defense exhibit during the hearing to dispute the alleged license plate obstruction.

{¶ 10} On March 25, 2022, the trial court overruled Wood's motion to suppress in its entirety. On April 6, 2022, a jury trial was held, after which Wood was found guilty of driving under OVI suspension, a misdemeanor of the first-degree. The remaining offenses had been dismissed. Wood was sentenced to 170 days in jail, was ordered to successfully complete a remedial driving course as a condition of the return of full driving privileges after the suspension period, and was ordered to pay a $500 fine and court costs. The trial court also imposed a class seven license suspension for one year.

{¶ 11} Wood timely appealed from the trial court's judgment.

## II. Analysis

{¶ 12} Wood raises two assignments of error for our review, both relating to the denial of his motion to suppress. First, Wood argues that the trial court erred in overruling his motion to suppress because the officers lacked reasonable articulable suspicion to lawfully stop him. Secondly, Wood alleges that the trial court's findings of fact as related to the motion to suppress were against the manifest weight of the evidence. Because these issues are interrelated, we will consider them together.

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

{¶ 14} "An appellant has three methods for challenging a trial court's ruling on a motion to suppress: (1) contesting the court's findings of fact; (2) asserting that the court evaluated the facts pursuant to the wrong test; and (3) arguing that the court drew the wrong legal conclusion from the facts." *State v. Pickett*, 2017-Ohio-5830, 94 N.E.3d 1046, ¶ 7 (2d Dist.). In reviewing the first type of challenge, "an appellate court must determine whether said findings of fact are against the manifest weight of the evidence." (Citations omitted.) *State v. Strope*, 5th Dist. Fairfield No. 08 CA 50, 2009-Ohio-3849, ¶ 15. Under the second method, a defendant may claim that "the trial court failed to apply the correct legal test to the facts, in which event we must determine whether the trial court committed an error of law." *State v. Simmons*, 2d Dist. Montgomery No. 23991, 2011-Ohio-5561, ¶ 14. When reviewing the third type of claim, "an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case." (Citations

omitted.)   *State v. Morrow*, 5th Dist. Delaware No. 02 CA 22, 2002-Ohio-5287, ¶ 8.

{¶ 15} In this case, Wood contends that the trial court's findings of fact were against the manifest weight of the evidence (the first method) and that the traffic stop was unlawful because the officers lacked reasonable articulable suspicion (third method). We do not agree with either contention.

{¶ 16} When a defendant challenges a trial court's findings of fact as being against the manifest weight of the evidence, "we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice."   *State v. Coppage*, 2d Dist. Montgomery No. 19404, 2003-Ohio-2076, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 17} In the present case, Wood makes an assertion that the trial court "misheard the testimony" and "chose to ignore the facts and base its decision to deny [Wood's] Motion to Suppress on misinterpreted evidence while it ignored other evidence that defense counsel attempted to bring to the court's attention."   Brief of Appellant, p. 14-15. Wood does not identify what information the trial court "misheard" or misinterpreted, and we cannot discern any erroneous information upon which the trial court relied in rendering its decision.

{¶ 18} Nevertheless, Wood argues that Officer Mosier had no personal knowledge of the alleged violation and therefore had no reasonable suspicion to stop Wood.   While it is true that Officer Mosier was unfamiliar with Wood, she reasonably relied upon the

identification from Chief Stitzel, who was familiar with Wood, and heard dispatch confirm over the radio that Wood had a suspended license. The collective knowledge doctrine "permits police officers to rely on information provided to them by other officers in helping to establish probable cause or reasonable suspicion." (Citations omitted.) *State v. Jones*, 2d Dist. Montgomery No. 23926, 2011-Ohio-1984, ¶ 20. " 'Reasonable suspicion may exist on the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information.' " *State v. Mook*, 9th Dist. Wayne No. 97CA0069, 1998 WL 417461, *3 (July 15, 1998), quoting *United States v. Allison*, 616 F.2d 779, 782 (5th Cir.1980).

{¶ 19} Notably, the trial court found the testimony of the officers credible. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Accordingly, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Having reviewed the entire transcript of the hearing along with all the evidence submitted, we find nothing inherently incredible in the officers' testimony.

{¶ 20} Furthermore, although Wood has not identified what evidence the trial court allegedly ignored, we note that in the trial court, Wood relied on *State v. Cromes*, 3d Dist. Shelby No. 17-06-07, 2006-Ohio-6924, in support of his motion. At that time, Wood claimed that because there had been some confusion regarding the license plate, that had affected the lawfulness of his traffic stop. Presumably, Wood is reasserting his

contention that, because the confusion with the license plate was caused by the police, and there was no problem with the plate, then the traffic stop was unlawful. However, the trial court did not ignore this evidence; instead determined it was not relevant. After acknowledging that there had been some issue with the license plate and insurance paperwork, the trial court rejected Wood's argument, finding that *Cromes* was inapplicable. We agree with the trial court.

{¶ 21} In *Cromes*, an officer conducted a traffic stop after traveling behind the male driver for a period of time because the officer was unable to clearly read Cromes's license plate, in violation of R.C. 4503.21. When the officer ran the license plate, it came back to a female owner with a suspended license and it belonged to a different vehicle. However, upon approaching Cromes's vehicle, the officer realized that he had entered the license plate incorrectly. *Id.* at ¶ 5. The officer conceded during his testimony that there had been no dirt, mud, or improper paint on the plate, that it was in its correct location, and that there was nothing at all obstructing it. *Id.* at ¶ 9. When the officer ran the correct plate, the license plate was valid and matched the vehicle Cromes was driving. Nevertheless, the officer continued the traffic stop that eventually resulted in arresting Cromes for an OVI. After the trial court overruled Cromes's motion to suppress, he entered a no contest plea and appealed the trial court's decision. *Id.* at ¶ 17-19.

{¶ 22} On appeal, the Third District determined that the officer had had reasonable articulable suspicion to make a valid investigatory stop under R.C. 4503.21 for a plate violation based upon the officer's inability to read the defendant's rear license plate while following the vehicle. *Id.* at ¶ 27. However, the Third District further found that the

officer had had no reasonable suspicion to justify further detaining the defendant and demanding his driver's license once the officer observed that he had misread Cromes's legible license plate. Once the officer discovered that the license plate was readable from a distance of approximately ten feet and that the plate had not been intentionally obscured, the officer no longer had a reasonable suspicion that Cromes had violated R.C. 4503.21 and was not justified in further detaining Cromes and demanding the production of his driver's license. Accordingly, the Third District reversed the judgment of the trial court. *Id.* at ¶ 54.

{¶ 23} We find *Cromes* to be distinguishable from the present appeal. Whereas the basis for the stop in *Cromes* was entirely reliant on the officer's erroneous check of a license plate, which was quickly resolved, Wood was stopped because he was observed driving with a suspended license. At the time Chief Stitzel observed Wood driving the pickup truck, he was familiar with Wood and the distinct yellow truck based on prior interactions. Chief Stitzel was aware that Wood was driving with a suspended license and verified it through dispatch prior to requesting that Wood be stopped by a marked police cruiser. Officer Mosier also testified that she overheard through dispatch that Wood was driving with a suspended license prior to the traffic stop. Although it was later determined during the traffic stop that there may have been an error made with respect to running Wood's license plate, the trial court considered this evidence and rightfully rejected Wood's argument. The license plate issue was not the basis for the traffic stop and had no bearing on whether Wood was driving under suspension. Accordingly, the trial court's findings of fact were not against the manifest weight of the evidence.

{¶ 24} We now consider whether the facts supported the trial court's conclusions. In this instance, we accept the trial court's findings of fact and independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. We conclude that they do.

{¶ 25} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment to the United States Constitution, which protects individuals from unreasonable searches and seizures. *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Thus, when a police officer stops a vehicle and temporarily detains its occupants, a "seizure" has occurred within the meaning of the Fourth Amendment. *State v. Leveck*, 196 Ohio App.3d 26, 2011-Ohio-1135, 962 N.E.2d 316, ¶ 10 (2d Dist.), citing *Prouse* at 653.

{¶ 26} "The United States Supreme Court has stated that a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." (Citations omitted.) *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7. The existence of reasonable articulable suspicion is determined by evaluating the totality of the circumstances, which must be considered "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (C.A.D.C.1976), and *State v. Freeman*, 64 Ohio St.2d 291, 295, 414 N.E.2d 1044 (1980). "Therefore, if an officer's decision to stop a motorist for a criminal

violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Mays* at ¶ 8.

**{¶ 27}** Chief Stitzel testified that the reason for the traffic stop was that Wood had been driving with a suspended license, which is a misdemeanor of the first degree. *See* R.C. 4510.14(B)(1) and 4510.11(D)(1). Chief Stitzel had personally observed Wood, with whom he was familiar, driving the distinct yellow truck and then had confirmed with dispatch that Wood's license was suspended. Likewise, Officer Mosier testified that she and Officer Eddington stopped Wood because of his driver's license suspension. It was only upon walking up to Wood's vehicle after they had initiated the stop that Officer Mosier noticed the license plate violation and the cracked windshield. Accordingly, the officers had reasonable articulable suspicion that Wood was driving with a suspended license, which justified initiating the traffic stop. This suspicion did not abate simply because some confusion occurred regarding Wood's license plate and insurance paperwork.

**{¶ 28}** We cannot conclude that the trial court's decision overruling Wood's motion to suppress the evidence was against the manifest weight of the evidence. Moreover, the officers had reasonable articulable suspicion to justify the lawful traffic stop and to temporarily detain Wood. Accordingly, both of Wood's assignments of error are overruled.

### III. Conclusion

**{¶ 29}** Having overruled both Wood's assignments of error, we affirm the judgment of the trial court.

. . . . . . . . . . . . .

TUCKER, J. and HUFFMAN, J., concur.